## STANDARD OIL COMPANY v. CITY OF MINNEAPOLIS[1]

June 12, 1925.

No. 24,629.

**Refusal to grant license for gasolene filling station sustained.**

　　1. Record considered and *held* to warrant the affirmance of the order of the district court, in sustaining the respondents, in refusing to grant appellant a license to erect and maintain a gasolene filling station on the premises in question.

**Revocation of license by city council.**

　　2. There is no merit in the claim that the council acted without cause and without authority in revoking the license granted to appellant.

　　1.　See Municipal Corporations, 28 Cyc. p. 747.
　　2.　See Municipal Corporations, 28 Cyc. p. 748.

---

　　2.　See note in 18 A. L. R. 101.

Upon the relation of Standard Oil Company the district court for Hennepin county granted its alternative writ of mandamus directed to the city of Minneapolis and others commanding them to grant a license for a gasolene filling station. The matter was heard by Leary, J., who quashed the writ. Relator appealed from an order denying its motion for a new trial. Affirmed.

*Cobb, Wheelwright, Hoke & Benson,* for appellant.

*Neil M. Cronin,* City Attorney, and *Thomas B. Kilbride,* Assistant City Attorney, for respondent.

[1]Reported in 204 N. W. 165.

QUINN, J.

Mandamus on relation of the appellant to compel respondents to grant to it a license to erect and maintain a gasolene-filling station at the intersection of West Broadway and Fremont avenue, in the city of Minneapolis, upon a certain site, leased by it for that purpose.

An ordinance of the city provides that no building shall be erected for the storage or sale of oil or powder, within the limits of the city, unless the party desiring to erect such building shall have obtained permission from the city council authorizing the same, and the inspector of buildings shall not grant permit for any such building or structure, for any such purposes, until such permission is so obtained.

On December 15, 1921, appellant made written application to the council for permission to erect such a station. At that time it was negotiating for a lease of the lot from the owner thereof. A license was granted to the appellant on December 30, 1921, the lease was finally obtained on January 9, 1922, and on March 29, 1922, the building inspector issued a permit for the erection of a tin-onstud structure. On April 7, nine days after the permit was issued, the council, without notice to appellant, revoked the license. In August, 1923, the appellant filed a new application for a license with the council, which was, by that body, referred to a committee of the fire department. A protest, signed by 60 property owners in the locality, was presented and thereafter referred to the aldermen of the ward in which the site was located and the same was then referred to the fire committee and, on January 23, that committee recommended to the council that the application be denied. On January 25 the council denied the application.

By this action the appellant seeks to compel the council to issue to it a license to erect and maintain such a filling station upon the site mentioned. It is contended that it is entitled prima facie to such a license and that, in revoking the first license, the council acted without cause and without giving appellant notice and an opportunity to be heard upon the matter and that, in denying its second application, the council acted arbitrarily, unlawfully and

with discrimination, thereby depriving appellant of its property rights without due process of law. Upon the other hand, it is contended that the erection, maintenance of such a station on the site mentioned, and the carrying on of such business therein, would be a nuisance, in the way of creating an extra fire hazard and in congesting traffic in the streets.

The site is at an intersection of two heavily traveled streets. The streets adjacent thereto are paved. There is a large amount of motor vehicle traffic passing that point. On the opposite corner of the block is the Methodist Episcopal chapel; across the street from the site is a small garage, and next to it is the Y. W. C. A.; and across from there is the North Side High School athletic field; and between Seventeenth and Eighteenth avenues is the North Side High School; and a lumber yard is adjacent to the site.

Under the ordinance, and as a part of the police power, there is vested in the council a discretion relative to the place where such classes of business may be located within the city limits. No question is raised as to the qualification and fitness of the applicant, it having something like 50 filling stations within the city. The reasons given for withholding the license are that a station at that place would interfere with traffic upon the streets and increase the fire hazard. The discretion committed to the council should not be exercised with discrimination in favor of one party and against another, but we have no difficulty here in this regard. The mere fact that a like station is permitted within a block of the site in question does not, of itself, indicate discrimination. The application should not be denied without some good substantial reason therefor, but where, as in this case, a council, as the trial court found, after considering the matter and acting upon a reasonable basis, refused such an application, its act will not be interfered with by the courts.

We see nothing out of the ordinary in connection with the procedure in the present case, as pursued by the council. When the second application was filed, it was referred to the usual committee, then submitted to the aldermen of the proper ward as was the custom in such matters. Then it went back to the committee of the fire department, then recommended to the council adversely, and at

its first meeting was denied. There is no presumption that the committees failed to do their duty, nor may it be said that, because the records fail to show upon their face just what was done in the premises, the council acted without proper investigation and consideration in the matter. We have considered the record with considerable care and are of the opinion that the court was justified in finding therefrom that the council was within its discretion and within reason in denying the application.

There was direct testimony to the effect that a filling station has a tendency to slow up traffic on the street. If such is the fact, then in such places there might naturally follow a congested condition. At least such matters were proper for the consideration of the tribunal having the matter in charge and not for the courts. It hardly requires tangible proof to justify a council in acting upon such matters to properly consider the fire hazard. It is common knowledge that the business of maintaining the proposed filling station involves the keeping of large quantities of gasolene and oil, and the dispensing it to drivers of automobiles. The gasolene is stored in large, steel tanks, which are placed about four feet underground. The method of drawing the same from the containers and transferring it to the cars of the buyers is fraught with danger. Gasolene is highly inflammable and a violent explosive, all of which was undoubtedly considered by the council, as well as by the court, in affirming the acts of that body. Storer v. Downey, 215 Mass. 273, 102 N. E. 321; City of Des Moines v. Manhatten Oil Co. 193 Iowa, 1096, 184 N. W. 823, 188 N. W. 921, 23 A. L. R. 1322. We find no merit in the contention that the council acted without cause in revoking appellant's license.

Affirmed.