### HYMA *v.* SEEGER.

1. MUNICIPAL CORPORATIONS— ORDINANCES — VALIDITY — GASOLINE FILLING STATIONS—LICENSES.

   A city ordinance providing that no license shall be granted for a gasoline filling station "in any location where, by reason of traffic conditions or fire or explosion hazard, a filling station would imperil the public safety," may not be said to be invalid because no definite rules are laid down by it to determine under what conditions a filling station would imperil the public safety, and that the granting of said license was left to the whim and caprice of the city officials.[1]

2. SAME—FINDING OF COURT NOT SUSTAINED BY RECORD.

   Where the answer of city officials, in mandamus proceedings to compel them to grant a license for a gasoline filling station, set up undisputed facts upon which they acted, the finding of the trial judge that they acted arbitrarily and upon whim and caprice is without justification.[2]

Certiorari to superior court of Grand Rapids; Verdier (Leonard D.), J. Submitted January 22, 1926. (Docket No. 105.) Decided March 20, 1926.

Mandamus by Abe Hyma to compel Ralph E. Seeger, building inspector, and the city commission of the city of Grand Rapids to grant a building permit. From an order granting the writ, defendants bring certiorari. Reversed.

*Ganson Taggart,* for appellants.

*John J. Smolenski,* for appellee.

McDONALD, J. The plaintiff made application to the city commission of Grand Rapids for a license to

[1] Municipal Corporations, 28 Cyc. p. 354; [2] Licenses, 37 C. J. § 97. Public regulation or authorization of gas-filling stations, see notes in 18 A. L. R. 101; 29 A. L. R. 450; 34 A. L. R. 504.

construct a gasoline filling station at the corner of Roberts court and Grandville avenue under an ordinance which, so far as applicable, reads as follows:

"SECTION 3. No license shall be granted for any such filling station within 300 feet of any school, church, theatre, park or other place of public assembly, nor in any location where, by reason of traffic conditions or fire or explosion hazard, a filling station would imperil the public safety."

When the application was heard before the commission the records of its proceedings show that it was denied by the adoption of the following motion:

"Commissioner Karel moved that the application of A. Hyma for a drive-in station be denied on the ground that the locating of a filling, drive-in station at that point would be a menace to and would imperil public safety by reason of traffic conditions."

Feeling aggrieved at the action of the commission the plaintiff began mandamus proceedings in the superior court of Grand Rapids with the result that the writ was issued requiring the building inspector and the city commission to grant the permit. The defendants seek a review of these proceedings by certiorari from this court.

The principal question in issue involves a determination of the validity of that portion of the ordinance which authorizes the city commission to refuse a permit for the construction of a gasoline station "in any location where, by reason of traffic conditions or fire or explosion hazard a filling station would imperil the public safety." The trial judge took the view that this portion of the ordinance is invalid, because, as he says, it lays down no definite rule by which the city commission can determine what traffic conditions render a gasoline station a peril to the public safety, and that, without defining the conditions more specifically in the ordinance, the granting or refusing

of a license is left to the "whim and caprice" of the commission. We think that the court has taken too narrow a view of the matter. The ordinance does not leave the granting or refusal of a license to the arbitrary will of the commissioners. It does not merely provide that they shall determine the character of the location as to the public safety. It does that and more. It gives them a basis upon which they must make their determination. It directs them to consider the traffic conditions. It is true that it does not specify what condition of traffic would render the location of a gasoline station dangerous to the public. It would not be practical to do that. Indeed, it would be impossible to do so without making the ordinance indefinite and inapplicable to any location in the city. Supposing the ordinance had undertaken to specify how dense the traffic must be to make the location of a gasoline station a peril to the public. The degree of density could only be described by the number of vehicles and pedestrians on the street, the width of the street and other surrounding conditions. A specification of that kind could not be applied to a single location in the city, and certainly to not more than one, for at no two locations can the conditions be alike. The ordinance framed avoids such an absurd situation by leaving a determination of the question to the judgment of the commission on the facts relating to the traffic conditions. It is not to be condemned because it leaves something to the good sense and legislative judgment of the city commission. Of necessity, the governing body of large cities must be vested with broad discretion in such matters. In authorizing the exercise of this discretion to determine the character of a location for gasoline stations within the city, the ordinance lays down the rule applicable alike to all cases, that the test must be the traffic conditions. In view of this requirement it cannot be

said that it gives the commission unregulated discretion, and permits it to arbitrarily refuse a permit. We think that the court erred in holding the ordinance invalid.    See *Melconian* v. *City of Grand Rapids,* 218 Mich. 397.

One other question calls for our consideration.    The trial court found that in acting on the application the city commission did not reach its conclusion from a consideration of the facts, but arbitrarily and upon "whim and caprice" denied the permit.    This finding is best answered by the following uncontroverted statement of defendants' reasons for refusing the permit, which we quote from their answer to the plaintiff's petition for mandamus.

"That the proposed station, as set forth in the petition, would be located on a piece of ground 41.4 feet by 55 feet and would consist of a building and necessary drive-ways, two 1,000 gallon tanks, and other paraphernalia.    That Roberts court is not a full width street, but has an extreme width, from lot line to lot line, of forty (40) feet, that the paved way is twenty-four (24) feet from curb to curb; that Grandville avenue is one of the main trunk thoroughfares of the city of Grand Rapids, known as Trunk Line M-51, upon which there is constant and very heavy traffic; that Grandville avenue also has upon it a double street car line and is one of the main thoroughfares of the city, carrying not only local traffic, but, as a trunk line, traffic from other cities; that the narrow court combined with the constant travel on this street would render a filling station at this location a menace to the traveling public, both pedestrians and motorists; that the piece of land, 41 by 55 feet, assuming a filling station to be placed thereon, is not of sufficient size to enable it to successfully operate as a filling station and accommodate those who might wish to be served, without using and blocking the sidewalks adjacent to the property, to the inconvenience and danger of the traveling public."

The court cannot substitute its judgment for that of the city commission.    When it appears, as it does

from the above undisputed statement, that it acted upon facts and did not exercise its powers arbitrarily, its findings are conclusive.

No other questions require discussion.

The judgment is reversed.

Bird, C. J., and Sharpe, Snow, Steere, Fellows, Wiest, and Clark, JJ., concurred.