Jones, J.
 

 Counsel for the relator contend that Section 189 of the Zanesville 'ordinances is constitutionally invalid for two reasons: (1) that it unlawfully prohibits the relator from devoting his premises to lawful use, and (2) that, by reason of the consent provisions contained therein, the ordinance attempts to delegate to property owners legislative power which is vested solely in municipal councils.
 

 
 *254
 
 Upon the first proposition counsel rely upon the case of
 
 Powell
 
 v.
 
 Craig,
 
 113 Ohio St., 245, 148 N. E., 607, where this court held in substance that a filling station, erected according to methods of modern science and engineering, is not a nuisance
 
 per se;
 
 and that not being a nuisance, but a lawful business, it could lawfully be constructed in a residential district.
 

 The
 
 Powell case
 
 is readily distinguishable from this. There it did not appear that there was any state law or ordinance controlling the situation. Here there is. In the course of the
 
 per curiam
 
 opinion, at page 247, we said: “This court is confronted with the proposition of determining whether the invasion of an exclusively residential district by this class of business,
 
 not unlawful, either by statutory law, common law, or ordinance,
 
 constitutes a nuisance.” (Italics ours.) While it may be conceded that a filling station situated in a proper locality is not a nuisance
 
 per se,
 
 yet since it has the potentiality of becoming such, it is subject to proper police regulation by proper authorities.
 
 City of Muskogee
 
 v.
 
 Morton,
 
 128 Okla., 17, 261 P., 183;
 
 Martin
 
 v.
 
 City of Danville,
 
 148 Va., 247, 138 S. E., 629;
 
 Reinman
 
 v.
 
 City of Little Rock,
 
 237 U. S., 171, 59 L. Ed., 900, 35 S. Ct., 511. The first two cases related to the regulation of filling stations which were prohibited unless written consents of owners were first secured. The
 
 Beinman case
 
 involved the power of a city council to enforce ordinances prohibiting livery stables within certain districts. The court in the fourth proposition of the syllabus said:
 

 “Even though a livery stable is not a nuisance
 
 per se
 
 it is within the police power of the State to regulate the business, and to declare a livery stable to be a nuisance, in fact and in law, in particular circumstances and particular places.”
 

 Unlike many other businesses, filling stations which deal in inflammable substances such as gasoline and oils, and which give frequent service to passing automobiles,
 
 *255
 
 possess unusual hazards.
 
 People, ex rel. Busching,
 
 v.
 
 Ericsson,
 
 263 Ill., 368, 105 N. E., 315. If the legislation has a real and substantial relation to the needs of public welfare, morals or public safety, and is not arbitrary and unreasonable in character, the courts generally have upheld the power of regulation, even though it sometimes interferes with private rights.
 
 Pritz
 
 v.
 
 Messer,
 
 112 Ohio St., 628, 149 N. E., 30. The determination whether the ordinance regulations are reasonable and necessary for the safety of the public is committed to the discretion of the legislative body, and unless it is clear that such police regulations are unreasonable or arbitrary, or have no relation to the public health, morals and safety, the courts will not hold the same invalid, or substitute their judgment for the legislative discretion.
 
 City of Dayton
 
 v.
 
 S. S. Kresge Co.,
 
 114 Ohio St., 624, 151
 
 N.
 
 E., 775, 53 A. L. R., 916.
 

 In this state we have frequently declared that state and municipal authorities have power to regulate various kinds of business when they deem it to be in the interest of the public welfare. In
 
 State, ex rel. Euclid-Doan Building Co.,
 
 v.
 
 Cunningham, Bldg. Commr.,
 
 97 Ohio St., 130, 119 N. E., 361, L. R. A., 1918D, 700, this court held that ordinances of municipalities regulating the height, mode of construction and use of tenement houses are within a proper exercise of the police power for the preservation and promotion of the safety, health and welfare of the community. In
 
 State, ex rel. Ohio Hair Products Co.,
 
 v.
 
 Rendigs, Bldg. Commr.,
 
 98 Ohio St., 251, 120 N. E., 836, we held that a city ordinance forbidding the erection or use of buildings in a residential district, for the purpose of storage and the cleaning or renovation of hair products, was a valid exercise of the police power, although it affected a business which was not a nuisance
 
 per se.
 
 In the
 
 Bendigs case, supra, Thomas Cusack Co.
 
 v.
 
 City of Chicago,
 
 242 U. S., 526, 61 L. Ed., 472, 37 S. Ct., 190,
 
 *256
 
 L. R. A., 1918A, 136, Ann. Cas., 1917C, 594, is cited, reference being made to tbe following paragraph in the opinion of Mr. Justice Clarke: “It [the court] will interfere with the action of such authority [municipal] only when it is plain and palpable that it has no real or substantial relation to the public health, safety, morals, or to the general welfare”.
 

 The Zanesville ordinance stipulates that it shall be unlawful to install gasoline and oil stations
 
 “within the corporate limits of the city”
 
 unless written consents of property owners be first obtained. Had the facts developed in this case disclosed that the filling station proposed to be constructed was not located in a residential district, but in an outlying, unzoned section of the city, where there were no nearby buildings which could be affected, there might be grave doubt of the constitutionality of the ordinance when applied to such a peculiar state of facts. See
 
 People
 
 v.
 
 Ericsson, supra.
 
 But here the stipulated facts disclose that the property, upon which the filling station proposed to be constructed was located, was a corner of two avenues in the city of Zanesville, one of which is very much traveled; that the proposed filling station was to be located in a residential district, and would be surrounded by large residences. We think the city council could exercise this prohibitory power in a location of this character, and we think that its right to do so is supported by authority. In the
 
 City of Muskogee case, supra,
 
 there was an ordinance which prohibited the installation of gasoline service stations “within the city of Muskogee, Okla., outside of the fire limits”, but permitted such installation if written consents of owners of two-thirds of the property within 300 feet of the proposed gasoline station were obtained. The court held that such ordinance was a valid exercise of the police power and that it did not contravene the federal or state constitutions. Since the relator’s filling station is to be located in a resi
 
 *257
 
 dential district of the city, and since the city council has, in the exercise of its police power, prohibited installation of filling stations without first obtaining consents thereto, relator cannot complain that there has been an unconstitutional deprivation of its property uses. It becomes subject to the principle announced in
 
 Plymouth Coal Co.
 
 v. Pennsylvania, 232 U. S., 531, 58 L. Ed., 713, 34 S. Ct., 359: “One attacking the constitutionality of a state statute must show that he is within the class whose constitutional rights are injuriously affected by the statute. ’ ’
 

 The most serious proposition advanced by counsel for the relator, and upon which they train their heavier guns, is their claim that the ordinance of the municipal council of Zanesville delegates legislative authority to property owners because their consents must be secured before filling stations can be installed. There has been a great conflict of decisions among the courts of this country upon this legal question, many courts holding that consents similar.to those required in the Zanesville ordinance constitute a delegation of legislative power. Others take a different view and hold there is no such delegation. The various cases relating to this subject may be found in the annotations contained in 43 Corpus Juris, 246, Section 245. After stating the general rule, that the power of legislation may not be delegated to others, the text proceeds to say "that this rule “is not to be understood to inhibit the enactment of a law the operation of which is, to some extent, made dependent on the action of individuals. A distinction is made between ordinances or regulations which leave the enactment of the law to individuals and ordinances or regulations prohibitory in character but which permit the prohibition to be modified with the consent of the persons who are to be most affected by such modification.” Supporting this exception to the rule, and holding that consents of this character do not amount to
 
 *258
 
 delegation, of legislative power, are the following cases, among others:
 
 Myers
 
 v.
 
 Fortunato,
 
 12 Del. Chan. Rep., 374, 110 A., 847;
 
 City of Muskogee
 
 v.
 
 Morton, supra; United States, ex rel. Early,
 
 v.
 
 Richards,
 
 35 App., D. C., 540;
 
 Inspector of Buildings of Lowell
 
 v.
 
 Stoklosa,
 
 250 Mass., 52, 63, 145 N. E., 262. Bearing upon the same subject are
 
 Martin
 
 v.
 
 City of Danville,
 
 148 Va., 247, 138 S. E., 629;
 
 Thomas Cusack Co.
 
 v.
 
 City of Chicago, supra.
 
 The distinction made in the latter cases rests upon the legal principle that, since council had the power to make the inhibition absolute, without exceptions, city council, having that power, had the included power to impose reasonable conditions and exceptions; that, since the installation of gasoline stations could be and was wholly prohibited, those who propose to install them did not lose, but in fact gained, by taking advantage of the exceptions which required consents in order to take them out of an absolute prohibition. Probably the case most cited relating to the feature of frontage consents is that of
 
 Thomas Cusack Co.
 
 v.
 
 Chicago, supra,
 
 where Mr. Justice Clarke, commenting upon similar consent provisions, said: “The plaintiff in error cannot be injured, but obviously may be benefited by this provision, for without it the prohibition of the erection of such billboards in such residence sections is absolute. He who is not injured by the operation of a law or ordinance cannot be said to be deprived by it of either constitutional right or of property. * * * The ordinance in the case at bar absolutely prohibits the erection of any billboards in the blocks designated, but permits this prohibition to be modified with the consent of the persons who are to be most affected by such modification. * * * This is not a delegation of legislative power, but is, as we have seen, a familiar provision affecting the enforcement of laws and ordinances.” On the same point, see also
 
 Martin
 
 v.
 
 City of Danville, supra.
 

 In
 
 Cincinnati, W. & Z. Rd. Co.
 
 v.
 
 Commrs. of Clin
 
 
 *259
 

 ton County,
 
 1 Ohio St., 77, 88, Judge Ranney, treating of consent requirements in connection with the delegation of power, said: ‘ ‘ The law is therefore, perfect, final, and decisive in all its parts, and the discretion given only relates to its execution. It may be employed or not employed — if employed, it rules throughout; if not employed it still remains the law, ready to be applied whenever the preliminary condition is performed. The true distinction, therefore, is between the delegation of power to make the law,- which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first can not be done; to the latter no valid objection can be made.” In
 
 Peck
 
 v.
 
 Weddell,
 
 17 Ohio St., 271, this court upheld a statute providing for the removal of the seat of justice, the law becoming effective when a majority of the electors of the county voted for removal. The court held that the validity of the act was not affected by the contingency of obtaining the voters’ consent.
 
 Gordon
 
 v.
 
 State,
 
 46 Ohio St., 607, 23 N. E., 63, 6 L. R. A., 749, pertained to a statute prohibiting the sale of intoxicating liquors in any township where the majority of the votes cast were against their sale. The claim was made that the act embraced a delegation of legislative power. This court decided that the statute was not a delegation of legislative power in contravention of Section 1, Article II of the Constitution, and held that the law was a complete law, deriving none of its validity from a vote of the people; that the law took effect upon the happening of a contingency in accordance with the legislative will; and that its execution was made dependent upon a contingency which was prescribed by the legislative department. In
 
 Carpenter
 
 v.
 
 City of Cincinnati,
 
 92 Ohio St., 473, 111 N. E., 153, there was under consideration a statute providing that council could not make a grant to a street railway over the streets without
 
 *260
 
 the written consent of owners of more than one-half feet front of the lands abutting the street. The
 
 nisi prius
 
 court held that the statute was valid, but the Court of Appeals held it to be unconstitutional because it was a delegation of legislative power. This court reversed the Court of Appeals and held that the consent statute was not a delegation of legislative power. Counsel for relator place their chief reliance upon the decision Of this court in two cases, one being the
 
 City of Cincinnati
 
 v.
 
 Cook,
 
 107 Ohio St., 223, 140 N. E., 655, in which we held that an ordinance of the city of Cincinnati, making it unlawful for an operator of a vehicle to permit it to stand on the street in front of a passenger station unless permission therefor was secured from the person having supervision of the station, was invalid because of its attempted delegation of legislative power. In order to understand the ruling there made, the syllabus should be applied to “and read in view of the facts found in such case”.
 
 B. & O. Rd. Co.
 
 v.
 
 Baillie,
 
 112 Ohio St., 567, 148 N. E., 233. There was an attempt in the
 
 Co oh case
 
 to delegate power to an individual in respect to the control of city streets; or, as stated in the opinion, an attempt to confer “a proprietary interest in the street” upon an abutting owner. Control of streets is placed by law in the city council, and should not be relinquished to a private individual to the detriment of the general public. Since the power to do so did not exist, obviously because of its attempted delegation of power to an individual to say who could or could not occupy the street, the ordinance was held invalid by this court.
 

 Another case relied on by the relator is
 
 City of Camton
 
 v.
 
 Mid-Continent Producers & Refiners Corp.,
 
 115 Ohio St., 705, 155 N. E., 865, where an ordinance containing similar consent provisions was involved. A majority of this court held the ordinance invalid “upon the reasoning and authority” of the
 
 Cooh case, supra.
 
 Since that case is in direct conflict with the
 
 *261
 
 cases at bar upon the same constitutional question, it is obvious that the
 
 Canton case
 
 should be, and it is, overruled. The Federal case,
 
 Washington, ex rel. Seattle Title Trust Co., Trustee,
 
 v.
 
 Roberge, Supt. of Bldgs.,
 
 278 U. S., 116, 73 L. Ed., 210, 49 S. Ct., 50, 86 A. L. R., 654, is also cited as supporting the claim of the ordinance’s constitutional invalidity. However, Mr. Justice Butler, at the close of his opinion, clearly distinguishes the case from the earlier federal case,
 
 Thomas Cusack Co.
 
 v.
 
 City of Chicago, supra.
 
 The
 
 Roberge
 
 decision was based upon the conclusion that there was nothing to show that the building and its use would be objectionable in the community or that its construction would conflict with the public interest. The most recent judicial pronouncement upon the consents feature was made by the Massachusetts Supreme Judicial Court on January 10, 1935, in the case
 
 General Outdoor Adv. Co.
 
 v.
 
 Department of Public Works,
 
 —• Mass., —, 193 N. E., 799. Citing
 
 Thomas Cusack Co.
 
 v.
 
 Chicago, supra,
 
 with approval, Mr. Chief Justice Rugg, speaking for the court on page 818 of the reported case, said: “The requirement of written consent from the owners of a majority of the frontage on both sides of the street in certain residential districts as a prerequisite to granting a permit for the erection of an advertising device is reasonable.”
 

 We therefore hold that, considering the potential menace and hazards that may result from the use by filling stations of inflammable substances in residential districts, such stations are subject to reasonable regulation by municipal authorities, and that the regulations provided by the Zanesville ordinance are not arbitrary or unreasonable, but do have a substantial relation to the public safety and the public welfare. We also hold that the consent provisions contained in the Zanesville ordinance do not amount to a delegation of legislative power by the city council. Cases Nos. 25057 and 25089 were presented together and are
 
 *262
 
 similar in every respect except
 
 that
 
 they pertain to different locations in the city. In both cases, since the material facts are agreed to or conceded, the writ asked for will be denied.
 

 Writs denied.
 

 Wbygandt, C. J., Stephenson, Williams, Matthias, Day and Zimmerman, JJ., concur.