PURE OIL DIVISION OF UNION OIL CO. OF CALIFORNIA ET AL., APPELLANTS, *v.* CITY OF BROOK PARK ET AL., APPELLEES.

154

(No. 30405—Decided May 6, 1971.)

*Messrs. Benesch, Friedlander, Mendelson & Coplan,* for appellants.

*Mr. James F. Hennessy,* for appellees.

MANOS, J. Pure Oil Division of Union Oil Company of California, hereinafter referred to as Pure Oil, obtained options to purchase three parcels of real estate from appellants, Robert H. Montz, Elsie B. Montz, Edward P. Schmidt, Carol R. Schmidt, Norman A. Ashwood, and Peggy Ann Ashwood, to be used for the construction and operation of a gasoline filling station.

The subject properties are located on the northwest corner of the intersection of Smith and Snow Roads in the city of Brook Park across from a large shopping center known as Brookgate. There are gasoline stations on the northeast and southeast corners of the intersection and numerous commercial enterprises border on the east side of Snow Road. Appellants' properties are zoned for residential purposes while two of the three other corners of the intersection are zoned for commercial purposes. Both Smith and Snow Roads are heavily traveled thoroughfares with substantial commercial traffic. The appellant homeowners find their property to be unlivable because of

the increased traffic, noise and dirt, and seek a zoning reclassification in order to permit them to use their property for commercial purposes consistent with the use of the properties on the other two corners of the intersection.

In 1962, the homeowners requested that the city council rezone the property to a U-3 classification which would permit the construction of a gasoline filling station. This petition was rejected on the ground that any rezoning was "premature." In 1963 and 1964, filling stations were constructed on the easterly corners of Smith and Snow Roads, Smith Road was widened from two to four lanes, and the shopping center was enlarged. In 1965, following the above changes, a rezoning was again sought, but was denied after a public hearing.

In March 1966, the Regional Planning Commission recommended that the city create a new zoning district for Smith and Snow Roads on the northwest corner of which the use of a gasoline station would be permitted. Enforced with and encouraged by this report, the appellants again petitioned for a change in the zoning classification, which was denied.

In July 1967, the Regional Planning Commission submitted a plan to council calling for the rezoning of the subject property to a "limited commercial business district," a recommendation on which council failed to act.

On November 21, 1967, the council adopted ordinance no. 2710-1967, which amended ordinance no. 1121.23. Following the adoption of the foregoing ordinance, the council reclassified appellants' property to a commercial use. The Mayor vetoed the legislation and council failed to override the veto. Council considered, once more, the reclassification on March 11, 1968, but voted to reject it. On November 22, 1968, appellants filed an application for a permit to build a gasoline station and appealed its denial to the Court of Common Pleas of Cuyahoga County. Pursuant to that decision, an appeal was filed in this court.

The underlying principle in determining the validity of all zoning enactments is whether or not that ordinance passed under the state's police power is

related to the safety, health and welfare of the community. See *Euclid* v. *Ambler Realty Co.* (1926), 272 U. S. 365. Inherent in any analysis is a balancing of interests between the rights of the property owner and the right of the community to regulate the use of property for its general welfare. When, after balancing, it is found that there is no relationship between the community needs and the restrictions imposed upon property use, an unconstitutional "taking" has occurred.

The lower court held that subsections (c) and (d) of part C, paragraph a 4(b)(4) of ordinance no. 2710-1967, section 1121.23 of the codified ordinances of the city of Brook Park were unconstitutional, and concluded that the zoning ordinance restricting the use of the subject property to residential purposes was an unconstitutional taking of appellants' property without due process of law. In its "Memorandum of Opinion," dated March 10, 1970, the court stated at page 4:

"The continuation of residential restrictions upon appellants' property can only result in a deprivation of the welfare and safety of the appellants due to noxious fumes, dust and noise associated with traffic congestion."

We agree with this conclusion and add, further, that, under the facts stated, the only reasonable use to which the property could be put is commercial. The changed characteristics of the area make it impossible for the appellants to enjoy their property while zoned under a residential classification.

However, we find the lower court's decision to be incorrect in holding that subsections (a) and (f) of part C are constitutional.

Subsection (a) prohibits the construction of a gasoline filling station unless "51% or more of the property owners within 500 feet of the outer boundaries of the proposed gasoline station site" give their written consent. This ordinance is similar to the one attacked in *State, ex rel. Standard Oil Co.,* v. *Combs* (1935), 129 Ohio St. 251. However, we find this case distinguishable. In *Combs*, the court concluded that an ordinance requiring the consent of

51 per cent of the property owners within a given radius of a proposed gasoline filling station was constitutional because the property was located in a residential area and, therefore, the regulation related to the safety, health and welfare of the community. The court stated at page 256:

"* * * Had the facts developed in this case disclosed that the filling station proposed to be constructed was not located in a residential district, but in an outlying, unzoned section of the city, where there were no nearby buildings which could be affected, there might be grave doubt of the constitutionality of the ordinance when applied to such peculiar state of facts. * * * But here the stipulated facts disclose that the property, upon which the filling station proposed to be constructed was located, was a corner of two avenues in the city of Zanesville, one of which is very much traveled; that the proposed filling station was to be located in a residential district, and would be surrounded by large residences. * * *"

The facts before us are different. Appellants' properties are bordered by commercially zoned property on two of three sides at the intersection of two highly congested, four lane roads. Since the Common Pleas Court's decision, with which we concur in part, determined that restricting the properties to a residential use was an unconstitutional taking without due process of law, any requirement of written consent of the property owners within 500 feet under these facts bears no relationship to the safety, health and welfare of the community. We conclude, therefore, that this section as applied is unconstitutional.

Appellants further attack the constitutionality of subsection (f), which states:

"Council shall satisfy itself that such proposed gasoline and oil filling station use will not seriously injure the appropriate use of such church, school, library, public playground or existing gasoline and oil filling station, will not create additional traffic hazards and will not endanger or menace the health and safety of children or citizens of the city."

This provision is unconstitutional for two reasons.

Firstly, zoning laws cannot be used to regulate traffic. In *State, ex rel. Killeen Realty Co.,* v. *East Cleveland* (1959), 169 Ohio St. 375 at 386, the court stated: "Nonetheless, traffic regulations must remain a byproduct of zoning activities, and the primary product must always be to insure the greatest enjoyment of one's land * * *." *Cf. Brockman* v. *Morr* (1960), 112 Ohio App. 445. Admittedly, traffic patterns should be taken into consideration when a municipality designs a comprehensive zoning plan. However, when, as here, the subject property is located in an area burdened with heavy traffic, and the conclusion has been reached that the property can be used commercially only, the problem of additional traffic hazards must be secondary to the right of a property owner to have the use of his property in a manner that is consistent with its location.

Secondly, the ordinance states that council shall determine whether the proposed station will injure the use or operation of existing gasoline stations. This provision is unconstitutional because it controls competition. Zoning ordinances must be related to the general welfare of the public and cannot be used to control the business conduct of individual members of the public at large. Other areas of the law deal with this problem. See *State, ex rel. Rosenthal,* v. *Bedford* (1956), 74 Ohio Law Abs. 425.

The conclusion is inescapable that after determining in the first instance that appellants' property can only be used commercially, any restrictions inconsistent with that conclusion would deprive appellants of the best use of their property, without due process of law.

Therefore, we find and conclude that subsections (a) and (f), as applied to appellants, are unconstitutional.

*Judgment reversed, and final judgment entered for appellants.*

WASSERMAN, P. J., and KRENZLER, J., concur.